UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRED FULFORD,<br><br>  Plaintiff,<br><br>  v.<br><br>DON M. GRIFFITH,<br><br>  Defendant. | Case No. 16-cv-00770-MEJ<br><br>**ORDER DENYING MOTION TO DISMISS; DENYING MOTION TO STRIKE; SETTING BRIEFING SCHEDULE**<br><br>Re: Dkt. Nos. 9 and 12 |

## INTRODUCTION

Plaintiff, a California prisoner currently incarcerated at California Medical Facility, filed this *pro se* civil rights action under 42 U.S.C. § 1983. Now pending before the Court is Defendant's motion to dismiss (Docket No. 9) and Plaintiff's motion to strike Defendant's reply brief (Docket No. 18). For the reasons set forth below, Defendant's motion to dismiss is DENIED and Plaintiff's motion to strike is DENIED.

## BACKGROUND

The following facts are based on the allegations set forth in the complaint.

**Medical Treatment of Plaintiff's Foot.** Plaintiff was previously housed at San Quentin State Prison ("SQSP"). While housed at SQSP and sometime prior to December 15, 2010, Plaintiff met with Dr. Reyes, his primary care doctor at the time, for a regular office visit. Docket No. 1 at 6. Plaintiff informed Dr. Reyes that, for the past couple weeks, his left foot would swell up throughout the day and became painful, with the swelling decreasing overnight. *Id.* Dr. Reyes referred Plaintiff to Dr. Griffith, the named defendant, a SQSP podiatrist. *Id.* Dr. Griffith diagnosed Plaintiff with having "plantar fibromatosis, mid-arch" in his left foot. *Id.* The diagnosis was confirmed by x-rays. *Id.*

On December 15, 2010, Dr. Griffith performed surgery on Plaintiff's bottom left foot. A couple hours after the surgery, Dr. Griffith informed Plaintiff that there had been some serious complications during the surgery. Docket No.1 at 6. Dr. Griffith stated that Plaintiff had developed serious bleeding which "took some work to get stopped" and that Dr. Griffith had to cut deeper inside the foot. *Id.* Dr. Griffith instructed Plaintiff to stay off his foot, take it easy, and to keep a close watch on the foot. *Id.* Dr. Griffith informed Plaintiff that it should be fine. *Id.*

After the surgery, Plaintiff was unable to walk on his foot for several days. Docket No. 1 at 7. The foot continued to swell and became extremely painful. *Id.* Plaintiff's foot went numb if he stood in one place for more than a couple minutes. *Id.* Plaintiff's toes hurt and sharp pain would shoot up from the bottom of his foot. *Id.* Plaintiff started taking pain medication to address the pain. *Id.*

Plaintiff complained to Dr. Reyes, Dr. Griffith, and attending nurses. Docket No. 1 at 7. At a follow-up visit, Dr. Griffith informed Plaintiff that there are numerous nerves in the foot and that it was inevitable that some nerves would be damaged during an operation to address plantar fibromatosis. *Id.* Dr. Griffith had not previously informed Plaintiff that the operation would cause nerve damage. *Id.* Dr. Griffith told Plaintiff that his foot would take some time to heal because Dr. Griffith had to cut deeper into Plaintiff's foot than he would have liked. *Id.* Dr. Griffith implied that the continuing pain was due to Plaintiff failing to stay off the foot. *Id.*

On December 1, 2011, Dr. Griffith informed Plaintiff that he believed that the cause of Plaintiff's pain was nerve damage caused by the zig-zag cuts used during the surgery. Docket No. 1 at 8. Dr. Griffith then performed a second surgery at Palm Drive Hospital on the second and third toes of Plaintiff's left foot. *Id.* Dr. Griffith informed Plaintiff that the operation had gone well and that there were no problems. *Id.* However, after a couple of days, Plaintiff's foot again. started to swell up again. Plaintiff could not put any weight on the foot, and he experienced sharp pain all over his foot. *Id.* Dr. Griffith gave Plaintiff an injection of medication that numbed Plaintiff's entire foot for several days. *Id.* However Plaintiff's foot continued to cause him pain.

Plaintiff requested x-rays for his left foot several times, but the requests were denied. Docket No. 1 at 8. Plaintiff's foot and toes swelled up so much that his toenails popped off.

Blood and yellow pus oozed from his third toe. *Id.*

Dr. Griffith finally ordered x-rays of Plaintiff's foot. Docket No. 1 at 8. Dr. Griffith informed Plaintiff that the x-rays did not show any broken bones and only showed some infection in the area. *Id.* Dr. Griffith informed Plaintiff that the toenail would grow back. *Id.* at 9. Plaintiff examined the x-rays and noticed that a piece of bone was missing from the third toe and that something was out of place with the second toe. *Id.* When he questioned Dr. Griffith about this, Dr. Griffith put away the x-rays and at first refused to answer. *Id.* Finally, Dr. Griffith told Plaintiff that the bone was gone was from the second toe, that nothing could be done about it, and that Dr. Griffith did not intend to do anything about it. Dr. Griffith became angry and told Plaintiff to sue him, and that Dr. Griffith would only be responsible for $5,000 at most since he paid high insurance premiums.

At some point, Dr. Griffith admitted to Plaintiff that he had done the wrong surgery on Plaintiff's foot, but stated that he could not recall why and that there was nothing that could be done for the foot now.

**Healthcare Grievance.** On February 4, 2015, Plaintiff filed grievance number HC 15040474. Docket No. 1 at 14. Plaintiff has not filed a copy of his grievance but according to the institutional response for the first level appeal, Plaintiff complained that the prior foot and toe surgery he underwent at SQSP caused him irreversible damage and constant pain. *Id.* Plaintiff sought effective medical treatment for his left foot and toes and monetary compensation. *Id.* On February 19, 2015, Plaintiff's grievance was partially granted at the first level in that the reviewer found that Plaintiff had received, and was receiving, appropriate medical treatment for his foot, and denied the request for monetary compensation. *Id.* Plaintiff appealed this response and on April 13, 2015, Plaintiff's grievance was partially granted at the second level in that the reviewer found that Plaintiff had received, and was receiving, appropriate medical treatment for his foot, and denied the request for monetary compensation. *Id.* at 17. On July 12, 2015, the director's level decision also found that Plaintiff had received, and was receiving, appropriate medical treatment for his foot. *Id.* at 19.

**Instant Action.** Plaintiff filed the instant action on February 16, 2016. Docket No. 1. In

the complaint, Plaintiff alleged that Defendant caused irreversible injury to Plaintiff's left foot during the 2010 and 2011 surgeries, in violation of the Eighth Amendment. *Id.* at 11.

# DISCUSSION

## I. Motion to Strike

Plaintiff has moved to strike Defendant's reply brief as untimely. Docket No. 12. Plaintiff argues that the reply brief improperly raises new issues that can only be resolved through summary judgment, and therefore operates as both a cross-motion to dismiss and an amended motion to dismiss. *Id.* at 1. Plaintiff also alleges that Defendant has misrepresented factual evidence, and improperly alleged failure to exhaust administrative remedies in a motion to dismiss. *Id.* at 4–9. Plaintiff's motion to strike is DENIED.

Defendant's reply brief is neither a second motion to dismiss nor an amended motion to dismiss. Defendant's reply brief is properly understood as a reply brief in support of its motion to dismiss. Litigants may file reply briefs in support of their motions wherein they address arguments raised in opposition to their motion and they reemphasize arguments set forth in their motion. Such a reply brief is authorized by both Local Rule 7-3(c) and by the Court's April 11, 2016 Order of Service, which set forth a briefing schedule. Docket No. 5 at 4–5. The Court has reviewed the reply brief and finds that Defendant has neither misrepresented factual evidence nor raised new arguments. The Court agrees, however, that Defendant's reply brief is untimely. The Court's briefing schedule required Defendant to file a reply brief within fourteen days after the motion was filed. *Id.* Because Plaintiff's opposition was filed on June 20, 2016, Defendant's reply brief was due on July 5, 2016 and is therefore untimely. However, Defendant's reply brief, filed on July 11, 2016, complied with Local Rule 7-3(c) which requires that the reply brief "be filed and served not more than 7 days after the opposition was due." L.R. 7-3(c). Therefore, the Court, in its discretion, DENIES the Motion to Strike and will consider the substance of Defendant's reply. *Guerrero v. Hawaii*, 662 F. Supp. 2d 1242, 1250 n.8 (D. Haw. 2009).

## II. Motion to Dismiss

### A. Standard of Review

Under Fed. R. Civ. P. 12(b)(6), the Court must dismiss a complaint if a plaintiff can prove

4

no set of facts in support of his claim which would entitle him to relief. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001), *opinion amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001). In deciding a motion to dismiss, the Court accepts as true all material allegations in the complaint and construes them in the light most favorable to the plaintiff. *See Newman v. Sathyavaglswaran*, 287 F.3d 786, 788 (9th Cir. 2002). "The court need not, however, accept as true allegations that contradict matters properly subject to judicial notice or by exhibit. Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell*, 266 F.3d at 988 (internal citations omitted). *Pro se* pleadings are generally liberally construed and held to a less stringent standard. *See Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

In deciding whether to dismiss a claim under Rule 12(b)(6), the Court must limit its review to the four corners of the operative complaint, and may not consider facts presented in briefs or extrinsic evidence. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001); *Sprewell*, 266 F.3d at 988 ("Review is limited to the contents of the complaint."). A court may consider documents attached as exhibits to the complaint, exhibits incorporated by reference in the complaint, and matters of which the court may take judicial notice. *See U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) ("A court may . . . consider certain materials — documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice — without converting the motion to dismiss into a motion for summary judgment."). "[A] court *may not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss." *Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) (emphasis in original).

**B.     Statute of Limitations for § 1983 Actions**

Section 1983 does not contain its own limitations period. The appropriate period is that of the forum state's statute of limitations for personal injury torts. *See Wilson v. Garcia*, 471 U.S. 261, 275 (1985), *superseded by statute on other grounds as stated in Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 377–78 (2004); *TwoRivers v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1999). In California, the general residual statute of limitations for personal injury actions is the two-year

5

1   period set forth at section 335.1 of the California Code of Civil Procedure. Cal. Civ. Proc. § 335.1

2   (current codification of residual limitations period, which is now two years; enacted in 2002).

3   Section 335.1 therefore sets forth the applicable statute of limitations for § 1983 actions brought in

4   California. *See Maldonado v. Harris*, 370 F.3d 945, 954 (9th Cir. 2004) (applying California's

5   prior one-year statute of limitations to the § 1983 action).

6       A federal court must also give effect to a state's tolling provisions. *See Hardin v. Straub*,

7   490 U.S. 536, 542–44 (1989). In California, this includes tolling the statute of limitations during

8   imprisonment and while criminal charges are pending. The statute of limitations begins to run

9   immediately after the recognized disability period ends. *See Cabrera v. City of Huntington Park*,

10  159 F.3d 374, 378–79 (9th Cir. 1998). Section 352.1 of the California Code of Civil Procedure

11  recognizes imprisonment as a disability that tolls the statute of limitations when a person is

12  "imprisoned on a criminal charge, or in execution under the sentence of a criminal court for a term

13  of less than for life . . ." Cal. Civ. Proc. § 352.1(a). The tolling is not indefinite, however; the

14  disability of imprisonment delays the accrual of the cause of action for a maximum of two years.

15  *See id.*; *Fink v. Shedler*, 192 F.3d 911, 916 (9th Cir. 1999) *as amended on denial of reh'g and*

16  *reh'g en banc* (1999). Thus, an inmate has four years to bring a § 1983 claim for damages in

17  California, i.e., the regular two-year period under section 335.1, plus two years during which

18  accrual was postponed due to the disability of imprisonment as set forth in section 352.1. The

19  disability of imprisonment only delays the accrual of claims for damages under § 1983 and does

20  not delay the accrual of claims for injunctive and declaratory relief under § 1983. Cal. Civ. Proc.

21  § 352.1(c). The statute of limitations is tolled for the period in which a prisoner administratively

22  exhausted his underlying grievances, pursuant to the requirements of the PLRA. *See Brown v.*

23  *Valoff*, 422 F.3d 926, 942–43 (9th Cir. 2005) ("the applicable statute of limitations must be tolled

24  while a prisoner completes the mandatory exhaustion process").

25      It is federal law, however, that determines when a cause of action accrues and the statute of

26  limitations begins to run. *Wallace v. Kato*, 549 U.S. 384, 388 (2007); *Belanus v. Clark*, 796 F.3d

27  1021, 1025 (9th Cir. 2015). Under federal law, a claim generally accrues when the plaintiff knows

28  or has reason to know of the injury which is the basis of the action. *See TwoRivers*, 174 F.3d at

991–92 (citing *Kimes v. Stone*, 84 F.3d 1121, 1128 (9th Cir. 1996)); *Elliott v. City of Union City*, 25 F.3d 800, 802 (1994) (citing *Norco Construction, Inc. v. King County*, 801 F.2d 1143, 1145 (9th Cir. 1986)).  Accrual ultimately depends on the substantive basis of the claim.  *See, e.g.*, *Bradford v. Scherschligt*, 803 F.3d 382, 387–89 (9th Cir. 2015) (a claim for deliberate fabrication of evidence accrues when the charges are fully and finally resolved and can no longer be brought against the defendant; here, the acquittal at the retrial).

### C.     Analysis

Defendant has moved to dismiss the complaint on the grounds that it is time-barred by the applicable statute of limitations.  Defendant argues that Plaintiff's claims accrued by December 31, 2015 because Plaintiff's allegations relate to the two surgeries performed by Defendant on December 15, 2010 and on December 1, 2011, and Plaintiff's complaint indicates that Plaintiff was aware of the alleged injury to his foot within days after his 2010 surgery or, at the latest, a month after his 2011 surgery, on January 1, 2012.  Defendant argues that the statute of limitations therefore expired on December 31, 2016, two and a half months before Plaintiff filed the instant action on February 16, 2016.  Docket No. 9-1 at 5–7.  Defendant also argues that the Plaintiff's exercise of his administrative remedies was untimely and therefore failed to toll the limitations period, and that Plaintiff's health issues during 2013 also did not toll the limitations period.  *Id.* at 7–9.

Plaintiff argues that he was not aware of his claim until he filed his grievance on February 4, 2015.  Docket No. 10 at 4.  Plaintiff alleges that his health condition — a heart attack in July 2013, a five-minute "death experience" in October 2013, and the related recovery — prevented him from realizing or recalling that the 2010 and 2011 foot surgeries had caused him irreversible damage.  Docket No. 1 at 27.  Plaintiff further argues that the statute of limitations should be tolled for the time period he was exhausting his administrative grievances.

The parties agree that Plaintiff had four years to bring a § 1983 claim for damages (two years of tolling for the disability of imprisonment followed by the two-year statute of limitations).

### 1.     Claim Accrual

The first issue that must be resolved is when Plaintiff's claim accrued.  As discussed

7

above, a claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action. *See TwoRivers*, 174 F.3d at 991–92. According to the allegations set forth in the complaint, Plaintiff knew or had reason to know of the damage caused by the 2010 surgery soon after the December 5, 2010 surgery, and, at the latest, by December 1, 2011. In Plaintiff's complaint, he states that after the initial foot surgery on December 15, 2010, he started to feel significant pain which required him to take pain medication. Docket No. 1 at 7. He also states that he complained about the pain to Dr. Reyes, Dr. Griffith and attending nurses. *Id.* These allegations indicates that he was aware that the 2010 surgery had possibly gone wrong. Plaintiff further states in his complaint that on December 1, 2011, Dr. Griffith acknowledged that the 2010 surgery had damaged nerves in Plaintiff's foot. *Id.* Therefore Plaintiff knew of the injury caused by the 2010 surgery by December 1, 2011, at the latest. With respect to the 2011 surgery, the allegations in the complaint indicate that Plaintiff knew or had reason to know of the damage caused by the December 1, 2011 surgery by January 1, 2012. In the complaint, Plaintiff alleges that a couple days after the surgery, his foot again swelled up and caused him great pain. Defendant generously interprets "a couple days" as a month after the surgery, meaning the claim would accrue by January 1, 2012.

       The Court finds unpersuasive Plaintiff's claim that he was unaware of his claim until he filed his grievance on February 4, 2015, because it is contradicted by the allegations in his complaint. Plaintiff states that he suffered a heart attack on July 16, 2013; that there was a five-minute period on October 4, 2013 during which he was dead; and that he was ill for over a year after his death experience; and that he is "unable to do much of anything because of [his] heart and fighting the cancer." Docket No. 1 at 3 and 27. Plaintiff states that these medical issues prevented him from realizing that he suffered irreparable injury from the surgery. However, these statements directly contradict the allegation in the complaint that soon after each surgery, Plaintiff suffered great pain and found himself unable to use his foot normally, and the allegation that Dr. Griffith admitted to Plaintiff that the surgeries had caused nerve damage. Moreover, to the extent that Plaintiff's medical condition clouded his memory, Plaintiff's medical issues occurred a year and a half after Plaintiff learned of the basis of his claim, and Plaintiff took no action during that time

8

1   period. The Court finds that Plaintiff knew or should have known of his claim by January 1, 2012,

2   and that his claim therefore accrued on that day. *See Belanus*, 796 F.3d at 1026–27 (cause of

3   action for illegal search and seizure accrued when the wrongful act occurred where plaintiff was

4   aware that searches might have been improper even if plaintiff did not know at that time that the

5   search was warrantless). Since Plaintiff's claim accrued on January 1, 2012, the statute of

6   limitations ran on December 31, 2016, which would render the instant action, filed on February

7   16, 2016, untimely unless Plaintiff is entitled to additional tolling of the statute of limitations

8   beyond the tolling for the disability of imprisonment.

### 2.   Additional Tolling of the Statute of Limitations

Plaintiff argues that the statute of limitations should be tolled for the time period during which he exhausted his administrative remedies. Defendant argues that Plaintiff's grievance cannot toll the statute of limitations period because it was untimely and did not satisfy the Prison Litigation Reform Act ("PLRA")'s exhaustion requirement.

It is undisputed that, under California law, when "the exhaustion of administrative remedies is a prerequisite to the initiation of a civil action," tolling of the limitations period is automatic. *Elkins v. Derby*, 12 Cal.3d 410, 414 (Cal. 1974). Plaintiff's grievance was filed February 4, 2015,[1] and the director's level decision was issued on July 12, 2015. Docket No. 1 at 5, 14, 19–20. If the statute of limitation is tolled for the time period during which Plaintiff's grievances was being reviewed, the statute of limitation would run on June 6, 2016, rendering Plaintiff's action timely. The question therefore is whether Plaintiff's grievance was untimely and, if it was untimely, whether his untimely efforts to exhaust his administrative remedies tolled the statute of limitations.

---

[1] According to the complaint, Plaintiff's healthcare grievance number HC 15040474, which presented the facts underlying this complaint, was received by prison officials on February 4, 2015. Docket No. 1 at 5, 14. Prison officials issued a final denial of this grievance, also known as a director's level decision, on July 12, 2015. *Id.* at 19–20. In his opposition, Plaintiff alleges that that he submitted his healthcare grievance on January 22, 2015, and did not receive the director's level response until August 3 or 4, 2015. Docket No. 10 at 4 and 7. For the purposes of evaluating a motion to dismiss, the Court may only consider allegations made in the complaint, *see Lee*, 250 F.3d at 688, so must presume that the healthcare grievance was filed on February 4, 2015.

9

The PLRA's exhaustion requirement requires "proper exhaustion" of available administrative remedies, "which 'means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).'" *Woodford v. Ngo*, 548 U.S. 81, 90, 93 (2006) (citing *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)) (emphasis in original). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 90–91. However, if an inmate's grievance does not comply with a procedural rule but prison officials decide it on the merits anyway at all available levels of administrative review, it is exhausted. *Reyes v. Smith*, 810 F.3d 654, 656, 658 (9th Cir. 2016) (inmate whose grievance failed to name all staff members involved in his case, as required by 15 Cal. Code Regs. § 3084.2(a), nevertheless exhausted his claim of deliberate indifference to his serious medical needs because that claim was decided on its merits at all levels of review).

Section 3084.8(b) of the California Code of Regulations, title 15, requires inmates to file their administrative appeals within thirty calendar days of "(1) The occurrence of the event or decision being appealed, or; (2) Upon first having knowledge of the action or decision being appealed . . ." 15 Cal. Code Regs. § 3084.8(b). The "event" at issue in the instant action is the irreversible injury allegedly caused by Dr. Griffith's December 15, 2010, and December 1, 2011 surgeries. The Court has found *supra* that Plaintiff knew of this injury by January 1, 2012 at the latest. Pursuant to section 3084.8(b), Plaintiff had until January 31, 2012 to file his grievance. Plaintiff's grievance filed February 4, 2015 was therefore untimely.

However, despite the untimeliness of Plaintiff's grievance, prison officials proceeded to decide Plaintiff's claim on the merits. Docket No. 1 at 14–19. Accordingly, Plaintiff's claim is exhausted for purposes of the PLRA's exhaustion requirement. *Reyes*, 810 F.3d at 656, 658. Because this exhaustion was a prerequisite for Plaintiff to file this action, the Court finds that, pursuant to California law, the statute of limitations is tolled for the period during which Plaintiff was exhausting his administrative remedies. *Elkins*, 12 Cal.3d at 414. The limitations period therefore ended June 6, 2016, rendering Plaintiff's action, filed on February 16, 2016, timely.

1  Accordingly, Defendant's motion to dismiss this action as barred by the statute of limitation is
2  DENIED.

## CONCLUSION

For the foregoing reasons, the Court orders as follows:

1. Defendant's motion to dismiss (Docket No. 9) is DENIED, and Plaintiff's motion to strike (Docket No. 12) is DENIED.

2. The following briefing schedule for a dispositive motion is set:

   a. No later than 91 days from the date this Order is filed, Defendant must file and serve a motion for summary judgment or other dispositive motion. If Defendant is of the opinion that this case cannot be resolved by summary judgment, Defendant must so inform the Court prior to the date the motion is due. A motion for summary judgment also must be accompanied by a *Rand* notice so that plaintiff will have fair, timely and adequate notice of what is required of him in order to oppose the motion. *Woods v. Carey*, 684 F.3d 934, 939 (9th Cir. 2012) (notice requirement set out in *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998), must be served concurrently with motion for summary judgment).

   b. Plaintiff's opposition to the summary judgment or other dispositive motion must be filed with the Court and served upon Defendant no later than 28 days from the date the motion is filed. Plaintiff must bear in mind the notice and warning regarding summary judgment provided later in this Order as he prepares his opposition to any motion for summary judgment.

   c. Defendant shall file a reply brief no later than 14 days after the date the opposition is filed. The motion shall be deemed submitted as of the date the reply brief is due. No hearing will be held on the motion.

3. Plaintiff is advised that a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure will, if granted, end your case. Rule 56 tells you what you must do in order to oppose a motion for summary judgment. Generally, summary judgment must be granted when there is no genuine issue of material fact – that is, if there is no real dispute about any fact that would affect the result of your case, the party who asked for summary judgment is entitled to judgment as a matter of law, which will end your case. When a party you are suing

11

1 makes a motion for summary judgment that is properly supported by declarations (or other sworn
2 testimony), you cannot simply rely on what your complaint says. Instead, you must set out
3 specific facts in declarations, depositions, answers to interrogatories, or authenticated documents,
4 as provided in Rule 56(e), that contradict the facts shown in the defendants' declarations and
5 documents and show that there is a genuine issue of material fact for trial. If you do not submit
6 your own evidence in opposition, summary judgment, if appropriate, may be entered against you.
7 If summary judgment is granted, your case will be dismissed and there will be no trial. *Rand v.*
8 *Rowland*, 154 F.3d 952, 962–63 (9th Cir. 1998) (en banc) (App. A).

(The *Rand* notice above does not excuse Defendant's obligation to serve said notice again concurrently with any motion for summary judgment. *Woods*, 684 F.3d at 939).

This order terminates Docket Nos. 9 and 12.

**IT IS SO ORDERED.**

Dated: December 29, 2016

_____
MARIA-ELENA JAMES
United States Magistrate Judge